CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

**SEP 1 7 2019**

JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **ROBERT WILLIAMS PAGGANS, SR.,** | ) | |
| | ) | |
| **Petitioner,** | ) | **Civil Action No. 7:18cv00528** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **WARDEN,** | ) | **By: Hon. Jackson L. Kiser** |
| | ) | **Senior United States District Judge** |
| **Respondent.** | ) | |

Petitioner Robert Williams Paggans, Sr., a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2015 conviction imposed by the Circuit Court of Campbell County. This matter is before me on respondent's motion to dismiss. After reviewing the record, I will grant respondent's motion and dismiss Paggans' petition.

### I.

On March 19, 2015, in the Circuit Court of Campbell County, Paggans pled guilty to four counts of distributing cocaine, as third or subsequent offenses. At the guilty plea hearing, the prosecutor summarized the evidence against Paggans on the four charges. According to the prosecutor's summary, two confidential informants working for the Campbell County Sheriff's Office would have testified at a trial that they had obtained cocaine from Paggans on four different occasions. Regarding the March 20, 2014 offense, the prosecutor stated that one informant was given $60 and the other $40 to purchase cocaine from Paggans. The informants gave Paggans $100 and asked for crack cocaine. In exchange, Paggans provided three pieces of crack cocaine to the informants. The informants turned over the drugs to the investigator, and an examination by the Department of Forensic Science determined the items were indeed cocaine.

On April 3, 2014, the same two informants participated in a purchase from Paggans. That time, they received $260 for the purchase, $250 to pay for the drugs and $10 for Paggans to go and get the cocaine. Paggans exchanged cocaine for the money from one of the informants. On April 10, 2014, the same informants received $100 to purchase cocaine. Although the sale was supposed to occur at Paggans' home, Paggans called the informants and told them to park at the Mexican restaurant behind his house because the police were in front of his house. One of the informants parked at the restaurant, went to Paggans' back door, and exchanged the money for cocaine. Finally, on May 13, 2014, the informants brought $100 to Paggans' home and exchanged the money for cocaine. All four drug sales were recorded by audio and video equipment, which included "face shots" of Paggans during the drug transactions.

Also during the guilty plea hearing, the court conducted a colloquy with Paggans before accepting his pleas. Paggans told the court that he understood the four charges against him and had had enough time to discuss the charges, including any defenses, with counsel. Paggans advised the court that he had discussed his plea options with counsel and after those discussions had decided, for himself, to plead guilty. Paggans said the pleas were freely and voluntarily made. The court reviewed with Paggans that by pleading guilty, he was giving up several rights. Paggans advised the court that no one had forced or threatened him to plead guilty to the charges. Paggans said that he had truthfully answered the questions on the plea form before he signed it, and he was entering the guilty pleas because he was in fact guilty of the charges. According to Paggans, he discussed with counsel the sentences that could be imposed. Paggans expressed his satisfaction with counsel's services. The court accepted Paggans' guilty pleas, convicted him as charged, and set the matter for sentencing.

Following preparation of a presentence report, the court held a sentencing hearing. At the

hearing, Investigator Dwayne Wade of the Campbell County Sheriff's Department testified about some of the details of the drug distributions, including Paggans' instructions to the informants to park at the Mexican restaurant on April 10, 2014. Defense counsel examined Investigator Wade regarding the fact that on some occasions Paggans had to physically go elsewhere to obtain the drugs he sold to the informants. Investigator Wade also confirmed that Paggans had provided information to Wade about drug dealing in the area. Investigator Penn of the Altavista Police Department testified that the confidential informants had reported to him that Paggans said that if he discovered they were "the law," he would get to them. Paggans did not deny that the four drug transactions had occurred, but did deny threatening the informants. Paggans further testified that he had provided Investigator Wade with all the information he had regarding the illegal drug trade in the area. During cross-examination, Paggans acknowledged that he had been dealing drugs and that he advised the purchasers to park at the Mexican restaurant because the police were nearby. The court ultimately sentenced Paggans to twenty-eight years of incarceration, with nineteen years suspended. Paggans did not appeal.

On February 21, 2017, Paggans filed a state habeas petition in the Circuit Court of Campbell County, alleging that the Commonwealth failed to disclose impeachment evidence about criminal misconduct by Altavista police officers and informants.[1] The court denied and dismissed Paggans' petition on June 26, 2017, finding that his claim had no merit. Paggans appealed to the Supreme Court of Virginia. The court refused his appeal on June 12, 2018, and denied his petition for rehearing on October 4, 2018. Paggans filed the instant federal habeas petition on October 24, 2018, raising the same claim he raised in state court.

---

[1] In October 2016, Kenneth Walsh, the former Chief of the Altavista Police Department, was convicted of embezzling public money, forging documents, and obtaining drugs by fraud. Walsh was accused of asking drug informants for the police department to buy prescription drugs for Walsh's personal use. It appears that an investigation of Walsh was ongoing at the time Paggans sold drugs to the confidential informants and/or when he entered his guilty pleas.

## II.

Paggans alleges that the Commonwealth failed to disclose impeachment evidence about criminal misconduct by Altavista police officers and informants. The Circuit Court of Campbell County adjudicated and rejected this claim, finding that it failed under United States v. Ruiz, 536 U.S. 622 (2002), and United States v. Moussaoui, 591 F.3d 263 (4th Cir. 2010). I find that the state court's adjudication of these claims was not contrary to, or an unreasonable application of, clearly established federal law and did not result in a decision that was based on an unreasonable determination of the facts. Accordingly, I will dismiss Paggans' claim.

When reviewing a habeas claim that has been adjudicated on the merits by a state court, a federal court may grant habeas relief only if the state court adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d). A state court's adjudication is considered contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court decision unreasonably applies clearly established federal law if the court identifies the correct legal principle, but unreasonably applies it to the facts of the case. Id. at 413. It is not enough that a state court applied federal law incorrectly; relief may only be granted if the application of federal law is unreasonable. Id. at 411. Factual determinations made by the state court are "presumed to be correct," and the petitioner has the burden of rebutting that presumption of correctness by "clear and convincing

evidence." § 2254(e)(1). A federal habeas court must review the ruling of the state court based on the record before the state court, as "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court."[2] Cullen v. Pinholster, 563 U.S. 170, 181-83 (2011).

Paggans did not proceed to trial and instead pled guilty to the four charges against him. The state court found that the Commonwealth was not required to disclose impeachment information before accepting Paggans' guilty pleas. In order to establish a Brady violation, a defendant must show that the government failed to disclose "evidence favorable to an accused. . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. Evidence is favorable to the accused not only if it would exculpate the accused, but also if it could be used to impeach a government witness. United States v. Ellis, 121 F.3d 908, 914 (4th Cir. 1997). "The Brady right, however, is a trial right . . . . and exists to preserve the fairness of a trial verdict and to minimize the chance that an innocent person would be found guilty." United States v. Moussaoui, 591 F.3d 263, 285 (4th Cir. 2010). "[T]he Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." United States v. Ruiz, 536 U.S. 622, 628, 633 (2002). Here, because Paggans pled guilty and there was no trial, the Commonwealth had no constitutional duty to disclose any impeachment information.[3] See id. at 629; Moussaoui, 591 F.3d at 285. I conclude that the state court's

---

[2] Paggans has submitted several documents that he did not present to the state court. I will not consider these documents in my review of Paggan's petition and the state court's decision. I note, however, that even if I did consider those documents, they would not change my analysis.

[3] The state court also found that even if Paggans had been entitled to Brady information, he had failed to demonstrate materiality necessary to establish a Brady claim. The court noted that while it appeared that a criminal investigation may have been under way concerning the chief of the Altavista Police Department during the time that Paggans sold drugs to the confidential informants on four

adjudication of Paggans' claim was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Accordingly, I will dismiss Paggans' petition.

## III.

For the reasons stated, the court will grant respondent's motion to dismiss Paggans' § 2254 petition.

**ENTERED** this 17th day of September, 2019.

SENIOR UNITED STATES DISTRICT JUDGE

---

occasions or when he entered his voluntary guilty pleas, Paggans had not shown any connection between the former Chief, or any other officer who engaged in criminal misconduct, and his case. The court noted that the record revealed that the prosecutor referred at the guilty plea hearing to the drug investigation by the Campbell County Sherriff's Office, and Investigator Dwayne Wade of the Campbell County Sherriff's Department testified at the sentencing hearing regarding the controlled buys and Paggans' statements to him after the investigation of his activities was completed. The court further found that while Investigator Penn of the Altavista Police Department was part of the investigation team, Paggans had not demonstrated that Investigator Penn was the subject of any criminal investigation at any time. The court found that Paggans had not proffered that any officer who participated in his case was involved in criminal misconduct or that any officer who was later convicted of a criminal offense was involved in his case. Therefore, the court concluded that Paggans had not demonstrated that the former Altavista Police Chief's criminal misconduct, or criminal misconduct of any other Altavista police officer constituted impeachment evidence material to Paggans' guilt or innocence, or to the punishment he received.